IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| HENRY LEE GORDON, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v | ) | Civil Action No. 2:06cv930-WKW |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the court on a motion by federal inmate Henry Lee Gordon, Jr. ("Gordon"), to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  After due consideration of Gordon's § 2255 motion, the supporting and opposing submissions, and the record in this case, the court concludes that an evidentiary hearing is not required and that, pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, the motion should be denied.

## I.  PROCEDURAL HISTORY

On March 26, 2004, a jury found Gordon guilty of four counts of interference with interstate commerce by means of extortion in violation of the Hobbs Act, 18 U.S.C. §§ 1951 and 1952 (Counts 1, 2, 5, and 6 in the indictment); one count of possession of a firearm by an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3) (Count 3); and one count of unlawful possession of cocaine base in violation of 21 U.S.C. § 844(a)

(Count 7).[1]  Sentence was imposed on March 3, 2005, with Gordon receiving 162 months'
imprisonment for each Hobbs Act violation, 120 months for the gun possession count, and
12 months for possession of cocaine base, all terms to be served concurrently.  Gordon
appealed to the Eleventh Circuit Court of Appeals, and on April 11, 2006, that court affirmed
his convictions and sentence.[2]  *United States v. Gordon*, No. 05-11429-BB.  Gordon did not
file a petition for certiorari with the United States Supreme Court.

On October 12, 2006,[3] Gordon filed this § 2255 motion, in which he asserts the
following claims:

1.    He is actually innocent of the Hobbs Act violations of which he was
      convicted.

2.    For purposes of obtaining a conviction under 18 U.S.C. § 922(g)(3), the
      government failed to prove the necessary "nexus" between his
      possession of a firearm in his capacity as police chief and his
      possession of a controlled substance.

3.    The racial composition of the jury violated his right to be tried by an
      impartial jury of his peers.

---

[1]Count 4 of the indictment, another Hobbs Act charge, was dismissed on the day of trial
pursuant to a motion by the government.

[2]On direct appeal, Gordon's appointed counsel filed a motion to withdraw supported by a
"no merit" brief prepared pursuant to *Anders v. California*, 386 U.S. 738 (1967).  The Eleventh
Circuit's independent review of the record revealed no arguable issues of merit in Gordon's appeal;
consequently, counsel's motion to withdraw was granted and Gordon's convictions and sentence
were affirmed.  *See United States v. Gordon*, [No. 05-11429] 146 Fed.Appx. 474 (11th Cir. Oct. 20,
2005, vacated and reinstated Apr. 11, 2006) (unpublished).

[3]*See* Doc. No. 1.  Although Gordons's § 2255 motion was date-stamped "received" in this
court on October 16, 2006, under the "mailbox rule," the court deems it filed on the date Gordon
delivered it to prison authorities for mailing, October 12, 2006.  *See Houston v. Lack*, 487 U.S. 266,
271-72 (1988); *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001).

4.     At trial and on appeal, he received ineffective assistance of counsel for the following reasons:

    a.    Counsel's failure to understand the nature of the charges allowed the prosecution to conflate evidence of Gordon's drug infractions with evidence relating to the Hobbs Act allegations, resulting in his conviction for Hobbs Act offenses.

    b.    Counsel failed to argue that because Gordon was required to possess a firearm in his capacity as police chief, he was not guilty of violating 18 U.S.C. § 922(g)(3).

    c.    Counsel permitted Gordon to be tried before a jury of eleven whites and one black, resulting in the violation of his right to be tried by an impartial jury of his peers.

The government argues that Gordon's substantive claims (Grounds 1 through 3, above) are procedurally barred because they could have been, but were not, raised on direct appeal and that, in any event, such claims are without merit and entitle Gordon to no relief. (Doc. No. 10.) The government further argues that Gordon's claims of ineffective assistance of counsel (Grounds 4a through 4c, above) are likewise meritless and afford no basis for relief. (*Id*.) Gordon was allowed an opportunity to respond to the government's submission and has done so. (Doc. No. 14.)

## II.   DISCUSSION

## A.   "Actual Innocence" Claim

Gordon maintains that he is actually innocent of violating the Hobbs Act. *See § 2255 Motion* (Doc. No. 1) at p. 4; *Memorandum in Support of § 2255 Motion* (Doc. No. 1-7) at pp.

4-14. In this regard, he argues that while there was "substantial testimony as to inappropriate drug interactions, [there was ] no inference of racketeering or extortion by use of force or under color of official right," as required for a Hobbs Act violation under 18 U.S.C. §§ 1951 and 2. *See § 2255 Motion* at p. 4. Gordon's claim is unavailing.

> To successfully plead actual innocence, a petitioner must show that his conviction resulted from "a constitutional violation." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995). To do so, he must demonstrate "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 115 S.Ct. at 867; *Arthur* [*v. Allen*], 452 F.3d [1234], []1245 [(11th Cir. 2006)]. The petitioner must raise "sufficient doubt about [his] guilt to undermine confidence in the result of the trial." *Arthur*, 452 F.3d at 1245 (quotations and citation omitted). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct.1604, 1611, 140 L.Ed.2d 282 (1998).

*Johnson v. Fla. Dep't of Corr.*, 513 F.3d 1328, 1334 (11th Cir. 2008).

"To be credible, [an actual innocence] claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). One aspect of Gordon's actual innocence claim is that the terms used in the Hobbs Act are "vague and undefined." *See § 2255 Motion* at p. 4; *Memorandum in Support of § 2255 Motion* at pp. 5-6. However, his arguments in support of this assertion do not rely on any new evidence and amount to little more than a back door attempt to relitigate the legal sufficiency of the evidence to

4

support his convictions.[4]  *See Bousley*, 523 U.S. at 623.

In support of his claim of actual innocence, Gordon has also submitted affidavits from three individuals providing statements to the effect that the criminal allegations against Gordon were the product of a conspiracy to oust Gordon from his position as Chief of Police of Mosses, Alabama,[5] and to "put an end" to a lawsuit that Gordon had filed against the City of Hayneville.  *See* Doc. Nos. 14-2 through 14-4.  One of these affiants, Harold Bell, who preceded Gordon as Chief of Police of Mosses, avers that, "[i]n the time during which Mr. Gordon was Chief of Police, I conducted some investigation" for an investigator hired by Gordon's attorney and "discovered a conspiracy to discredit Mr. Gordon as regards his complaint against Hayneville and to use that discreditation [sic] to try to secure Mr. Gordon's job as Chief of Police of Mosses."  Doc. No. 14-3 at pp. 1-2.  According to Bell, the allegations against Gordon were fabricated "to avoid liability and to injure Mr. Gordon."  *Id*. at p. 2.  In addition, Bell states that "the testimony of witnesses against Mr. Gordon was obtained from known drug dealers and others under duress and under the threat of recrimination if they did not cooperate and testify against Mr. Gordon for the government."  *Id*.  In his affidavit, Bell does not provide the names of those persons involved in the alleged conspiracy against Gordon, nor does he provide any specific facts about how he learned of the conspiracy.

---

[4]This court also notes that

[5]Gordon was Chief of Police of Mosses from April 2000 until his arrest in this case in October 2003.

Two of the affiants, Lewis Coleman and Robert Means, maintain that at around the time of Gordon's arrest, they were approached by law enforcement officers who either coerced or attempted to coerce them into making false statements that implicated Gordon in the use of illegal drugs. *See* Doc. Nos. 14-2 & 14-4.  According to Coleman, the officers threatened to "put me away for a long time" on drug charges if he did not tell them "what they wanted to hear....  So, I figured out what they wanted to hear and I said it to them and they set me free to go."  Doc. No. 14-2 at p. 2.  In his affidavit, Means, who also avers to being pressured to incriminate Gordon, states, in part:  "I believe that if these officers of the law treated the other witnesses against Mr. Gordon the same way that they treated me that many would have caved and agreed to say what the offers wanted them to say."  Doc. No. 14-4 at 2.

Gordon filed a post-trial motion to set aside the jury's guilty verdicts as to the Hobbs Act counts. *See* Criminal Case No. 2:03cr287-WHA, Doc. No. 55.  The district court denied that motion in a Memorandum Opinion and Order in which the court reviewed in meticulous detail the evidence supporting each challenged Hobbs Act conviction and concluding in each instance that a reasonable jury could have found Gordon guilty of violating the Hobbs Act. *Id*. at Doc. No. 72.  A review of the district court's Memorandum Opinion and Order, as well as the transcript of Gordon's trial, reveals that none of the testimony relied upon by the government to establish Gordon's Hobbs Act violations was presented by the individuals whose affidavits Gordon now presents.  Indeed, of the three affiants, only Coleman testified

at Gordon's trial, and his testimony bore only on the non-Hobbs Act charges against Gordon. Furthermore, in addition to being notably lacking in details of the alleged conspiracy against Gordon, none of the affidavits points to any specific false testimony allegedly presented at trial. It was abundantly clear during trial that several of the government's witnesses were involved in the use and sale of illegal drugs, and these witnesses were thoroughly cross-examined on these matters and their possible motives for incriminating Gordon. Finally, the vague and generalized assertions in the affidavits submitted in support of Gordon's § 2255 motion are all the more unconvincing when measured against the substantial evidence of Gordon's guilt that was presented at trial.

On this record, Gordon has failed to meet his burden to show actual innocence. Pursuant to *Schlup*, *supra*, this court readily concludes that Gordon has not presented sufficient "new reliable evidence" to raise the requisite doubt about his guilt and undermine confidence in the result. *See* 513 U.S. at 324.

**B.    Substantive Claims**

Gordon presents the following two substantive claims, neither of which was raised on direct appeal:

1.    For purposes of obtaining a conviction under 18 U.S.C. § 922(g)(3), the government failed to prove the "nexus" between his possession of a firearm in his capacity as a police officer and his possession of a controlled substance.

2.    The racial composition of the jury violated his right to be tried by an impartial jury of his peers.

7

*See § 2255 Motion* at pp. 7-8.  Ordinarily, if an available substantive claim is not advanced on direct appeal, it is deemed procedurally barred in a § 2255 proceeding.  *Mills v. United States*, 36 F.3d 1052, 1055-56 (11th Cir. 1994); *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989).  A petitioner can avoid this procedural bar by showing both cause for the failure to raise the claim on direct appeal and actual prejudice arising from that failure.  *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Mills*, 36 F.3d at 1055.

Both of the above-mentioned substantive claims are also presented in Gordon's § 2255 motion as bases for separate allegations of ineffective assistance of counsel.  In addition, Gordon appears to assert the ineffective assistance of counsel as cause for his prior failure to raise the substantive claims.  *See Memorandum in Support of § 2255 Motion* at pp. 16-17.  Ineffective assistance of counsel may satisfy the "cause" exception to a procedural bar, but only if the claim of ineffective assistance is meritorious.  *Greene*, 880 F.2d at 1305. Therefore, this court will consider these substantive claims in the context of Gordon's allegations of his counsel's ineffectiveness.  In resolving Gordon's ineffective assistance claims, this court necessarily considers and resolves the underlying substantive claims as well.

Gordon also asserts an additional, independent claim of ineffective assistance of counsel.  That claim is also reviewed below in this court's discussion of Gordon's allegations of ineffective assistance of counsel.

**C.      Ineffective Assistance of Counsel**

### 1. Standard of Review

A claim of ineffective assistance of counsel is governed by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). *Grossman v. McDonough*, 466 F.3d 1325, 1344 (11th Cir. 2006). Under *Strickland*'s two-part test, a petitioner must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (internal quotation marks omitted); *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). A "reasonable probability is one "sufficient to undermine confidence in the outcome." *Strickland*., 466 U.S. at 694.

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id.* (internal quotation marks and brackets omitted). Thus, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id.*

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, once a court

decides that one of the requisite showings has not been made, it need not decide whether the other one has been.  *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong").

A criminal defendant's right to effective assistance of counsel continues through direct appeal.  *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Ineffective assistance of appellate counsel may be shown if the movant can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.... Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."  *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir. 1994).

> ### 2.    Ineffective Assistance Claims
>
> #### a.    Counsel's failure to understand the charges against Gordon resulted in his Hobbs Act convictions.

Gordon contends that his counsel failed to understand the nature of the charges against him and consequently allowed the prosecution to conflate in the jury's eyes evidence of Gordon's drug crimes with evidence relating to his alleged Hobbs Act violations.  *See § 2255 Motion* at pp. 5-6; *Memorandum in Support of § 2255 Motion* at pp. 4-16.  According to Gordon, counsel "allowed the prosecution to ramble on about drugs, thereby confusing the jury into thinking that violation of the drug laws constituted a violation of the Hobbs Act."

10

*§ 2255 Motion* at p. 5.  Gordon maintains that his counsel's deficient performance in this regard resulted in his conviction for the Hobbs Act violations.

Addressing this allegation in an affidavit filed with this court, Gordon's counsel states:

> Gordon appears to believe that his counsel should have somehow prevented the government from mentioning drugs at all, but that would have been impossible for several reasons.  First, the very object of the Hobbs Act transactions indulged in by Gordon was crack cocaine; second, a separate count charged possession of crack cocaine; third, the government was required to prove in a separate count that Gordon possessed a weapon while a user of controlled substances.  Gordon's suppositions about what the jury focused on and how it failed to differentiate between charges are not supported by any record and are beyond counsel's knowledge or control.

*Affidavit of Jay Lewis*[6] (Doc. No. 4) at pp. 1-2.

Gordon's conclusory claim that his counsel did not understand the nature of the charges against him is unsupported by the record.  As counsel correctly notes in his affidavit, reference to controlled substances was an essential part of the evidence necessary to support Gordon's convictions on the Hobbs Act charges as well as the remaining counts of the indictment of which Gordon was convicted.  Each of the four Hobbs Act counts – Counts 1, 2, 5, and 6 in the indictment – alleged that cocaine base was one of the objects extorted by Gordon through his position as a law enforcement official.[7]  Further, possession or use of a

---

[6]Mr. Lewis represented Gordon in the trial court proceedings, and was allowed to withdraw as his counsel after filing an *Anders* brief on appeal.

[7]Count 1, in pertinent part, charged that, from an unknown date but beginning in or about 1999, and continuing up to or about October 2003, Gordon did knowingly, willfully, and unlawfully affect and attempt to affect interstate commerce and the movement of articles and commodities in

controlled substance was an element of each remaining charge against Gordon.[8]  Thus, the presentation of substantial drug-related evidence was unavoidable and could not have been prevented by any actions on the part of counsel.  Gordon fails to bring to this court's attention any evidence that was wrongly admitted and points to no specific instances in the record where the prosecution was permitted to "ramble" unduly about drug-related matters.

---

interstate commerce by extortion, in that Gordon unlawfully obtained loans and cocaine base not due him or his office, from Edward Patterson, with his consent, induced by wrongful use and threat of use of fear and under color of official right, in violation of 18 U.S.C. §§ 1951 and 2.

Count 2 alleged that, during the same time period set forth in Count 1, Gordon did knowingly, willfully, and unlawfully affect and attempt to affect interstate commerce and the movement of articles and commodities in interstate commerce by extortion, in that Gordon unlawfully obtained money, loans, firearms, and cocaine base not due him or his office, from Marcus Wright, with his consent, induced by wrongful use and threat of use of fear and under color of official right; in violation of 18 U.S.C. §§ 1951 and 2.

Count 5 alleged that Gordon did knowingly, willfully, and unlawfully affect and attempt to affect interstate commerce and the movement of articles and commodities in interstate commerce by extortion, in that Gordon unlawfully obtained cocaine base not due him or his office, from Cedric Reeves, with his consent, induced by wrongful use and threat of use of fear and under color of official right; in violation of 18 U.S.C. §§ 1951 and 2.

Count 6 charged that Gordon did knowingly, willfully, and unlawfully affect and attempt to affect interstate commerce and the movement of articles and commodities in interstate commerce by extortion, in that Gordon unlawfully obtained cocaine base not due him or his office, from G.C., with his consent, induced by wrongful use and threat of use of fear and under color of official right; in violation of 18 U.S.C.§§ 1951 and 2.

[8]Count 3 charged that, during the same time period set forth in Count 1, Gordon was an unlawful user of a controlled substance as defined in 21 U.S.C. § 802, and did knowingly possess in and affecting commerce a firearm and ammunition, specifically, a Ruger, Model P94, 9 mm semi-automatic pistol, serial number 308-54518, and live 9mm rounds of ammunition, in violation of 18 U.S.C. § 922(g)(3).

Count 7 charged that, on or about October 23, 2003, Gordon did knowingly and intentionally possess approximately 7.1 grams of cocaine base, in violation of 21 U.S.C. § 844(a).

Nor does Gordon demonstrate a reasonable likelihood that the jury was confused about the elements of the Hobbs Act violations alleged against him.

Consequently, the court concludes that Gordon has failed to show that his counsel's performance in this regard was deficient and that such performance prejudiced his case. *See Strickland v. Washington*, 466 U.S. 668, 687-89 (1984). Therefore, he is not entitled to relief based on this claim.

> **b.    Counsel failed to argue that because Gordon was required to possess a firearm in his capacity as police chief, he was not guilty of violating 18 U.S.C. § 922(g)(3).**

Gordon contends that his counsel rendered ineffective assistance by failing to argue that because he was required to possess a firearm in his capacity as police chief, he should not have been convicted of violating 18 U.S.C. § 922(g)(3). *§ 2255 Motion* at pp. 5 & 7; *Memorandum in Support of § 2255 Motion* at pp. 22-24. According to Gordon, Congress did not intend to penalize law enforcement officers – who are required to carry firearms – under the statute. *Memorandum in Support of § 2255 Motion* at p. 24.

Section 922(g)(3) makes it "unlawful for any person ... who is an unlawful user of or addicted to any controlled substance ... to possess in or affecting commerce, any firearm." 18 U.S.C. § 922(g)(3). The statute does not contain an exception for unlawful users of controlled substances who happen to be law enforcement officers. Further, Gordon provides no support for his argument that Congress intended to exempt law enforcement officers from the scope of the statute. As the government observes in its answer, Gordon's argument

13

"would produce an absurd result that would permit the very persons responsible for law enforcement to use drugs, yet keep ready access to firearms despite their demonstrated pattern of noncompliance with drug laws." *Government's Answer* (Doc. No. 10) at p. 9.

As for Gordon's contention that to obtain a conviction under the statute, a "nexus" must be demonstrated between the firearm possession and drug possession, the only nexus requirement is that there be some *temporal* nexus demonstrated between the firearm possession and regular drug use. *See, e.g.*, *United States v. Turnbull*, 349 F.3d 558, 561 (8th Cir. 2003); *United States v. Jackson*, 280 F.3d 403, 406 (4th Cir. 2002); *United States v. Purdy*, 264 F.3d 809, 812 (9th Cir. 2001). Testimony presented at trial demonstrated that Gordon was buying and using crack cocaine during the time he was Chief of Police of Mosses; that he used crack cocaine from 1998 through 2003; and that he was seen with his service weapon when he purchased crack cocaine. The evidence of Gordon's prolonged drug use that occurred contemporaneously with his possession of a firearm supported his conviction for violating § 922(g)(3).[9] *See United States v. Herrerra*, 313 F.3d 882, 885 (5th Cir. 2002) (en banc) (upholding conviction under statute were drug use was regular and over an extended period of time); *Jackson*, 280 at 406 (upholding conviction under § 922(g)(3) where evidence showed a pattern of firearm use and recent drug use); *Purdy*, 264 F.3d at

---

[9]Gordon also argues that he could not have violated § 922(g)(3) because crack cocaine is not a narcotic. This argument is irrelevant for purposes of § 992(g), which incorporates the controlled substances defined at 21 U.S.C. § 802. Section 802(6) defines "controlled substance" as "a drug or other substance ... included in schedule I, II, III, IV, or V of part B of this subchapter." The schedules of controlled substances are set forth at 21 U.S.C. § 812(c), which lists coca leaves and its derivatives in Schedule II(a)(4).

812-13 (to sustain conviction under § 922(g)(3), government must prove defendant took drugs with regularity, over and extended period of time, and contemporaneously with his purchase or possession of a firearm).

Because Gordon fails to show that, as a law enforcement officer, he was exempt from the scope of § 922(g)(3), this court concludes that he likewise has failed to show that his counsel's performance in this regard was deficient and that such performance prejudiced his case. *Strickland*, 466 U.S. at 687-89. Therefore, he is not entitled to relief based on this claim.

        **c.**    **Counsel permitted Gordon to be tried by a jury whose racial composition violated his right to be tried by an impartial jury of his peers.**

Gordon contends that his counsel was ineffective for permitting him to be tried before a jury of eleven whites and one black in violation of his right to be tried by an impartial jury of his peers. *§ 2255 Motion* at pp. 5 & 8; *Memorandum in Support of § 2255 Motion* at pp. 17-21. In this regard, Gordon argues that an impermissible disparity in racial composition of approximately 920% between the jury in his case and his home community of Mosses, Alabama, resulted because his jury was selected from the Middle District of Alabama as a whole, instead of from his "peer jurisdiction" of Mosses. *Memorandum in Support of § 2255 Motion* at p. 21.

It is well settled that "defendants are not entitled to a jury of any particular composition, but the jury wheels, pools of names, panels, or venires from which juries are

drawn must not systematically exclude distinct groups in the community and thus fail to be reasonably representative." *United States v. Green*, 742 F.2d 609, 611 (11th Cir. 1984). Under the Jury Selection and Service Act ("JSSA"), the relevant community from which a jury is to be selected is "the district or division wherein the court convenes." 28 U.S.C. § 1861. "[D]efendants are not entitled to a jury drawn from any particular division within a district." *United States v. Holstick*, 875 F.Supp 795, 799 (M.D. Ala. 1994). "Each criminal jury is composed of persons selected from the district at large (that is, from all three divisions)." *United States v. Carmichael*, 467 F.Supp. 1282, 1287 (M.D. Ala. 2006). Thus, there is no merit to Gordon's suggestion that the population of Mosses – and not the Middle District of Alabama as a whole – is the relevant community from which his jury should have been selected.

Gordon fails to demonstrate a violation of the JSSA in his case. Further, he fails to show the systematic under-representation of African-Americans in the jury-selection process in Alabama's Middle District. *See Duren v. Missouri*, 439 U.S. 357, 364 (1979). Because the substantive basis of Gordon's claim is meritless, he likewise fails to show that his counsel was ineffective for failing to raise such a claim. *Strickland*, 466 U.S. at 687-89. Therefore, he is not entitled to any relief based on this claim.

## III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Gordon be denied, as the claims therein entitle him to no

relief.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before September 24, 2008.  A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE, this 12th day of September, 2008.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

17